## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Nina Y. Wang

Civil Action No. 25-cv-02269-NYW-NRN

MATTHEW LEWIS, on behalf of himself and similarly situated employees,

     Plaintiff,

v.

EAGLE COUNTY GOVERNMENT,

     Defendant.

---

## ORDER

---

This matter is before the Court on the Court's Order to Show Cause, [Doc. 24], and Plaintiff's Response to Show Cause Order ("Response"), [Doc. 26], and Second Motion for Leave to File Amended Complaint Limited to Correct Citations ("Second Motion to Amend"), [Doc. 19]. Counsel for the Parties appeared before the Court for a Show Cause Hearing on November 3, 2025. For the reasons set forth herein, the Order to Show Cause [Doc. 24] is **MADE ABSOLUTE**.

### BACKGROUND

Plaintiff Matthew Lewis ("Plaintiff" or "Mr. Lewis") initiated this action through counsel Sara A. Green ("Ms. Green") of the law firm Hardin Thompson PC on July 23, 2025. [Doc. 1]. In his original Complaint, Mr. Lewis alleged that Defendant Eagle County Government ("Defendant" or "Eagle County") violated the Fair Labor Standards Act ("FLSA") by "willfully misclassif[ying] a group of employees, including those performing Aircraft Rescue and Firefighting (ARFF), airport operations and maintenance duties, as exempt from overtime pay under 29 U.S.C. § 207(k) firefighter exemption, despite the fact

that firefighting duties do not comprise more than 80% of their job responsibilities."  [*Id.* at ¶ 2].  Relying upon 29 C.F.R. § 553.212, Plaintiff averred that "[o]n average, Plaintiff and other similarly situated employees spend most of their working time on these non-firefighting operational duties, far exceeding the 20% threshold permitted under the FLSA for maintaining the Section 7(k) exemption."  [*Id.* at ¶¶ 20–21].  Mr. Lewis invoked this "20% rule"[1] and sought to proceed as a collective action to recover unpaid overtime wages, liquidated damages, attorneys' fees and costs, and pre- and post-judgment interest for himself and others similarly situated.  [*Id.* at 32].

On August 28, 2025, Defendant filed an Unopposed Second Motion for 14-Day Extension for Defendant to File Its Answer Or Otherwise Response [sic] to the Complaint ("Second Motion to Extend") [Doc. 11].  In that Second Motion to Extend, Defendant represented that "[t]he parties are in the process of conferring, pursuant to NYW Civ. Practice Standard 7.1(B), about legal issues that may be raised in a motion to dismiss."  [*Id.* at ¶ 5].  The Honorable N. Reid Neureiter granted the Second Motion to Extend, and

---

[1] In 1999, Congress amended the FLSA to add a definition for "employee in fire protection activities" for purposes of the firefighter exemption.  *See* Act of Dec. 9, 1999, Pub. L. No. 106-151, 113 Stat. 1731 (codified at 29 U.S.C. § 203(y)).  The FLSA defines an "[e]mployee in fire protection activities" as an employee who (1) "is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State"; and (2) "is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk."  29 U.S.C. § 203(y).  Prior to 2011, the FLSA's implementing regulations also imposed the 20% rule for fire protection personnel that provided that an employee who spends more than 20% of his or her time on nonexempt work (i.e., non-firefighting work) cannot qualify as an "employee engaged in fire protection . . . activities."  29 C.F.R. § 553.212(a) (2010).  The regulation was amended effective 2011, such that the 20% rule no longer applies to fire protection personnel as defined by § 203(y).  *See* 29 C.F.R. § 553.212(a) (2011).

set the deadline to answer or otherwise respond to the original Complaint to September 17, 2025.  [Doc. 13].

On September 6, 2025, Plaintiff filed his Motion for Leave to File Amended Complaint, seeking leave to amend his original Complaint "to clarify his factual allegations and legal theories, including revisions to address Defendant's anticipated reliance on the 'fire protection' exemption under 29 U.S.C. § 207(k)."  [Doc. 14 at ¶ 4].  Plaintiff included a proposed First Amended Complaint, and a redline of the original Complaint reflecting the proposed amendments.  [Doc. 14-2; Doc. 14-1].  However, the Court struck the Motion for Leave to File Amended Complaint for lack of the required conferral.  [Doc. 15].

Three days later, Mr. Lewis filed an Unopposed Motion for Leave to File Amended Complaint ("First Motion to Amend").  [Doc. 16].  Defendant did not oppose its filing, but reserved its right to file a response to the First Amended Complaint.  [*Id.* at 1].  The First Amended Complaint asserted the same causes of action, but eliminated any reference to 29 C.F.R. § 553.212 or the argument that the firefighter exemption to the FLSA pursuant to 29 U.S.C. § 207(k) did not apply because Mr. Lewis and similarly situated employees did not primarily engage in fire protection activities more than 20% of the time.  *See* [Doc. 16-1].  In addition, Plaintiff included new factual assertions and legal arguments, including:

> 23. Fires at the airport are rare, and Plaintiffs seldom, if ever, engage in actual fire suppression.  These allegations plausibly establish that Plaintiffs are not regularly engaged in firefighting activities.

> 24. Courts interpreting § 203(y) confirm that training and authority alone are insufficient to qualify for exemption: (a) *Huff v. DeKalb County, Ga.*, 516 F.3d 1273, 1279–80 (11th Cir. 2008); (b) *Morrison v. County of Fairfax, Va.*, 826 F.3d 758, 769 (4th Cir. 2016); (c) *Christian v. Harris County, Tex.*, 529 F.3d 613, 622 (5th Cir. 2008).

25. Whether Plaintiffs are exempt under § 207(k) is a fact-intensive inquiry not suited for resolution at the pleading stage. Courts consistently deny motions to dismiss where plaintiffs plausibly allege firefighting is not their primary duty. *See Perez v. City of Key West, Fla*., 261 F. Supp. 3d 1252 (S.D. Fla. 2017); *Lang v. City of Omaha*, 186 F. Supp. 3d 1140 (D. Neb. 2016); *Cox v. Town of Poughkeepsie*, 209 F. Supp. 3d 319 (S.D.N.Y. 2016).

[Doc. 18 at ¶¶ 23–25].  The Court granted the First Motion to Amend and docketed the First Amended Complaint on September 9, 2025.  [Doc. 17; Doc. 18].

On September 16, 2025, counsel for Eagle County contacted Ms. Green by e-mail, with a subject line of "Matthew Lewis v. Eagle County – Citations in Amended Complaint," alerting her that defense counsel had not been able to locate the following cases cited in the First Amended Complaint:  "*Christian v. Harris County, Tex*., 529 F.3d 613, 622 (5th Cir. 2008)"[2]; "*Perez v. City of Key West, Fla*., 261 F. Supp. 3d 1252 (S.D. Fla. 2017)"; "*Lang v. City of Omaha*, 186 F. Supp. 3d 1140 (D. Neb. 2016)"; and "*Cox v. Town of Poughkeepsie*, 209 F. Supp. 3d 319 (S.D.N.Y. 2016)."  [Doc. 20-1 at 1].  Defense counsel requested that Ms. Green produce copies of the cases with correct citations.  [*Id.*].  In response on that same day,[3] Ms. Green stated, "The cases were inadvertently included. They exist but do not belong in this complaint."  [*Id.* at 1].  Ms. Green did not produce copies of any cases or any corrected citations.  [Doc. 20 at 2].

Later that same day, Ms. Green contacted defense counsel and stated, "I will be filing a second motion to amend the complaint to fix those citations.  Do you oppose?" [Doc. 20-2 at 4].  Defense counsel responded the following day, September 17, 2025,

---

[2] The Court uses quotation marks when citing to cases that do not exist.

[3] The time stamps on the e-mail messages were presumably generated in different time zones, resulting in some ambiguity regarding the exact timing of the messages. Nevertheless, the precise timing of the communications is not material, as neither side argues that the correspondence is not presented to the Court in chronological order.

again requesting copies of the previously identified cases, as well as a copy of the proposed Second Amended Complaint. [*Id.* at 3–4]. Defense counsel further indicated that "[y]ou have not given us enough information to enable us to take a position on a second motion to amend the Complaint," and informed Ms. Green that "[u]pon receipt of your response to this email, we will indicate our position on a second motion to amend the Complaint." [*Id.*].

When Ms. Green responded on September 17, 2025, she did not provide copies of the citations nor a copy of the proposed Second Amended Complaint. [Doc. 20-2 at 3]. Nor did she provide any explanation of how the citations at issue ended up in the First Amended Complaint. [*Id.*]. Instead, she stated:

> I am removing the citations from the complaint. As I stated they were inadvertently included. I do not know how else to explain that to you. I will be asking the court to amend the complaint to remove these citations. Do you oppose this request?

[*Id.*].

Defense counsel then responded later that same day, taking issue with not only the four cases he originally identified, but also arguing "the cases that you cited which do exist do not stand for the propositions for which they were cited." [Doc. 20-2 at 1]. Specifically, counsel for Eagle County identified *Huff v. DeKalb County, Ga.,* 516 F.3d 1273, 127–80 (11th Cir. 2008) and *Morrison v. County of Fairfax, Va.*, 826 F.3d 758, 769 (4th Cir. 2016), [*id.* at 1–2], referring to Plaintiff's citation of such authority in the First Amended Complaint for the proposition that "Courts interpreting § 203(y) confirm that training and authority alone are insufficient to qualify for the §207(k) exemption," [Doc. 18 at ¶ 24]. Defense counsel concluded by stating, "Please be advised that, if you file a second motion to amend, without complying with our requests, we will oppose it

5

vigorously and will seek sanctions from the court." [Doc. 20-2 at 2].

The following day, September 18, 2025, Ms. Green acknowledged Defendant's

position and informed it that:

> Plaintiff is filing a motion for leave to amend to clarify and correct the case
> citations at issue and to provide additional verified legal authority supporting
> the allegations regarding the § 203(y) firefighter exemption.  We trust this
> will address your stated concerns.  We understand by your email below that
> you oppose this amendment.

[Doc. 20-2 at 1].  The correspondence did not attach the proposed Second Amended

Complaint, nor did it identify the "additional verified legal authority" that Ms. Green

intended to rely upon in the Second Amended Complaint.  [*Id*].  Ms. Green filed Plaintiff's

Second Motion to Amend shortly thereafter.  [Doc. 19].  In the Second Motion to Amend,

Plaintiff stated:

> Certain case citations in the First Amended Complaint were inadvertently
> mis-cited. Plaintiff has reviewed these authorities and, to ensure accuracy
> and clarity, the Second Amended Complaint replaces them with properly
> cited and verifiable cases, including *Cleveland v. City of Los Angeles*, 420
> F.3d 981 (9th Cir. 2005) and *Haro v. City of Los Angeles*, No. 12-55062 (9th
> Cir. Mar. 18, 2014), which directly support Plaintiff's allegations regarding
> the § 203(y) firefighter exemption.

[Doc. 19 at 2].  Plaintiff's counsel further explained:

> These are the correct citations to the First Amended Complaint although
> they have now been removed and replaced: *Cox v. Town of Poughkeepsie,
> NY*, 209 F. Supp. 2d 319 (S.D.N.Y. 2002) (contains provisions relevant to
> firefighters and FLSA); *Christensen v. Harris County*, 529 U.S. 576 (2000)
> (May come into play as the case progresses regarding comp time versus
> overtime pay); *Perez v. City of Key West, Fla*., 823 F. Supp. 934 (M.D. Fla.
> 1993) (inadvertently attached to the string citation); *Lang v. City of Omaha*,
> 186 F.3d 1035 (8th Cir. 1999) (pre-amendment case to FLSA statute).

[*Id.* at 2 n.1].  Defense counsel represents, as an officer of the Court, that he did not

receive a copy of the proposed Second Amended Complaint prior to the filing of the

Motion.  [Doc. 20 at 3].

Defendant filed its Response to Second Motion to Amend Complaint ("Opposition") on October 7, 2025.  [Doc. 20].  Defendant opposed the Second Motion to Amend on multiple grounds:  (1) the original Complaint relied upon a pre-2011 version of the federal regulation, 29 C.F.R. § 553.212, that had been amended to eliminate the 20% rule; (2) when given the opportunity to amend, Plaintiff's First Amended Complaint cited cases that do not exist and other cases that do not support the legal propositions for which they are cited; (3) the proposed Second Amended Complaint was futile because it still failed to state a cognizable claim; and (4) Plaintiff acted in bad faith.  [*Id.* at 1–2].

On October 9, 2025, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice pursuant to Rule 41(a)(1)(A)(i).  [Doc. 23]; Fed. R. Civ. P. 41(a)(1)(A)(i).  Due to the serious allegations contained in Defendant's Opposition, including but not limited to citations of cases that do not exist, this Court issued an Order to Show Cause, directing Plaintiff to show cause in writing why the Court should not dismiss this action with prejudice or otherwise sanction Plaintiff and his counsel for misuse of generative artificial intelligence.  [Doc. 24].  The Court set oral argument for November 3, 2025.  [*Id.*].

Plaintiff filed his Response to the Order to Show Cause, [Doc. 26], and a Motion to Continue Oral Argument, Due to Scheduling Conflict and Request to Consider Written Response or Telephonic Participation ("First Motion to Continue"), [Doc. 27], on October 14, 2025.  The Court struck the First Motion to Continue for failure to confer with opposing counsel.  [Doc. 28].  Plaintiff then filed an Amended Motion to Continue Oral Argument, Due to Scheduling Conflict and Request to Consider Written Response or Telephonic Participation ("Amended Motion to Continue").  [Doc. 29].  In the Amended Motion to Continue, Plaintiff requested that the Court excuse Mr. Lewis from personally participating

in the hearing; reschedule the oral argument due to a conflict with a settlement conference set before the Honorable Scott T. Varholak in a separate action in the District of Colorado; and allow counsel to appear at such re-set oral argument by telephone, or in the alternative, simply determine the issues on the submitted record. [*Id.*]. By Order dated October 15, 2025, this Court excused Mr. Lewis from personally attending the oral argument but denied counsel's request to reset the oral argument, participate by telephone, or proceed on the papers. [Doc. 30].

On November 3, 2025, the Parties appeared before the Court for oral argument with respect to the Order to Show Cause. [Doc. 31]. Because the Response to the Order to Show Cause was not accompanied by an affidavit or declaration, the Court had Ms. Green sworn on the record and asked Ms. Green whether she was prepared to swear under the penalty of perjury that all of her factual statements and arguments in the Response to the Order to Show Cause were factually correct. [Hearing Tr. 1:21–2:17].[4] Consistent with the Response to the Order to Show Cause, Ms. Green repeatedly denied using artificial intelligence. [*Id.* at 6:15–17, 9:1–2]. This Court also discussed with Ms. Green the application of 28 U.S.C. § 1927 to her actions, and Ms. Green declined to make any further written submissions. [*Id.* at 17:15–18:15, 22:11–18].

## ANALYSIS

### I.    Rule 11 of the Federal Rules of Civil Procedure

Rule 11(b) provides:

---

[4] The Court cites to a preliminary nonpublic version of the transcript of the November 3, 2025 oral argument in this matter. Accordingly, there may be some variations with respect to page numbers, line numbers, and precise language, should an official transcript be ordered and prepared.

> "By presenting to the court a pleading, written motion, or other paper—
> whether by signing, filing, submitting, or later advocating it—an attorney or
> unrepresented party certifies that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances: . . . the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law."

Fed. R. Civ. P. 11(b)(2).  The standard of Rule 11 is one of "reasonableness under the
circumstances."  *Burkhart v. Kinsley Bank*, 804 F.2d 588, 589 (10th Cir. 1986) (citing Fed.
R. Civ. P. 11, advisory committee's notes on 1983 amendment).  Courts across the
country—both within the United States Court of Appeals for the Tenth Circuit ("Tenth
Circuit") and outside of it—recognize that an attorney's citation to non-existent cases
implicates Rule 11.  *See, e.g.*, *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo.
2025) ("At [Rule 11's] core, an attorney who signs a legal document certifies that they
have 'read the document, [have] conducted a reasonable inquiry into the facts and the
law and [are] satisfied that the document is well grounded in both, and is acting without
any improper motive.'" (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533, 542 (1991))); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y.
2023) ("The Court has described Respondents' submission of fake cases as an
unprecedented circumstance.  A fake opinion is not 'existing law' and citation to a fake
opinion does not provide a non-frivolous ground for extending, modifying, or reversing
existing law, or for establishing new law." (citation omitted)); *Ferris v. Amazon.com Servs.,
LLC*, 778 F. Supp. 3d 879, 881 (N.D. Miss. 2025) (applying Rule 11 to the plaintiff's
submissions of false citations through his complaint and subsequent filings).

   "If, after notice and a reasonable opportunity to respond, the court determines that
Rule 11(b) has been violated, the court may impose an appropriate sanction on any

attorney, law firm, or party that violated the rule or is responsible for the violation."  Fed.

R. Civ. P. 11(c)(1).  "Rule 11 sanctions are meant to serve several purposes, including

(1) deterring future litigation abuse, (2) punishing present litigation abuse,

(3) compensating victims of litigation abuse, and (4) streamlining court dockets and

facilitating case management."  *White v. General Motors Corp., Inc.,* 908 F.2d 675, 683

(10th Cir.1990) (citing American Bar Association, *Standards and Guidelines for Practice*

*Under Rule 11 of the Federal Rules of Civil Procedure* (1988), *reprinted in,* 5 C. Wright,

A. Miller & M. Kane, *Federal Practice and Procedure* 212, 235–36 (Supp.1989)).  The

central purpose of Rule 11 is deterrence.  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384,

393 (1990).  "The appropriate sanction should be the least severe sanction adequate to

deter and punish the [violating party]."  *White*, 908 F.2d at 684 (citations omitted).  "Absent

exceptional circumstances, a law firm must be held jointly responsible for a violation

committed by its partner, associate, or employee."  Fed. R. Civ. P. 11(c)(1).

## II.    28 U.S.C. § 1927

Section 1927 of Title 28 of the United States Code provides:

> Any attorney or other person admitted to conduct cases in any court of the
> United States or any Territory thereof who so multiplies the proceedings in
> any case unreasonably and vexatiously may be required by the court to
> satisfy personally the excess costs, expenses, and attorneys' fees
> reasonably incurred because of such conduct.

28 U.S.C. § 1927.  "Whether to impose sanctions under § 1927 is a decision the court

does not take lightly."  *Grays v. Auto Mart USA, LLC*, No. 18-cv-01761-MSK-NYW, 2019

WL 7289024, at *4 (D. Colo. Sep. 25, 2019) (citing *DMA Int'l, Inc. v. Qwest Commc'ns*

*Int'l, Inc.*, 585 F.3d 1341, 1345 (10th Cir. 2009)), *recommendation adopted*, 2019 WL

5541272 (D. Colo. Oct. 28, 2019).  "[I]n the Tenth Circuit, the standard for imposing

sanctions for unreasonably and vexatiously multiplying proceedings is an 'extreme standard,' and fees should be awarded as a sanction 'only in instances evidencing a serious and standard disregard for the orderly process of justice.'" *O'Rourke v. Dominion Voting Sys. Inc.,* 552 F. Supp. 3d 1168, 1188 (D. Colo. 2021) (quoting *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015)), *modified on reconsideration on other grounds*, No. 20-cv-03747-NRN, 2021 WL 5548129 (D. Colo. Oct. 5, 2021).  "[A]ny conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court is sanctionable."  *Baca*, 806 F.3d at 1268 (quotation and brackets omitted).

"Before awarding sanctions pursuant to § 1927, a court must make 'specific findings' identifying 'the extent of the multiplicity resulting from the attorney's behavior and the costs arising therefrom,' as well as describing the 'objectionable conduct' in sufficient detail to permit a meaningful response and facilitate appellate review."  *Crocs, Inc. v. Effervescent, Inc*., No. 06-cv-00605-PAB-KMT, 2017 WL 4368158, at *2 (D. Colo. Sep. 30, 2017) (quoting *Braley v. Campbell*, 832 F.2d 1504, 1513 (10th Cir. 1987) (en banc)).

With these principles in mind, the Court turns to considering whether the conduct of Plaintiff's counsel merits sanctions under Rule 11 or § 1927.  Based on the record before it, this Court concludes that the answer to both inquiries is yes.

**ANALYSIS**

**I.    Rule 11 Sanctions**

As an initial matter, four cases reflected in the First Amended Complaint plainly do not exist as cited:  "*Christian v. Harris County, Tex*., 529 F.3d 613, 622 (5th Cir. 2008)"; "*Perez v. City of Key West, Fla*., 261 F. Supp. 3d 1252 (S.D. Fla. 2017)"; "*Lang v. City of Omaha*, 186 F. Supp. 3d 1140 (D. Neb. 2016)"; and "*Cox v. Town of Poughkeepsie*, 209

F. Supp. 3d 319 (S.D.N.Y. 2016)."  [Doc. 18 at ¶¶ 24–25].

Ms. Green's inclusion of four cases in the First Amended Complaint that do not exist[5] is plainly a violation of a signer's certification under Rule 11 that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2).  Citation to cases that do not exist is fundamentally frivolous and unequivocally violates Rule 11's precept that court submissions be based on existing law or other nonfrivolous legal arguments.

Even putting aside that the error-filled citations bear the hallmarks of generative artificial intelligence—*e.g.*, the use of *Christian* instead of *Christiansen* as a party's name; the repeated misattributions to incorrect case reporters, courts, and years; and the use of cases that simply do not stand for the proposition for which they are cited—there can be no doubt that Ms. Green did not engage in an inquiry reasonable under the circumstances.  Ms. Green insists that she used the cases as "placeholders to further do research," but concedes that she did not do such further research or check the citations prior to the filing of the First Amended Complaint.  [Doc. 26 at 2–3; Hearing Tr. 6:7–13, 7:20–25].  When asked how a U.S. Supreme Court citation became a citation to an F.3d case citation, Ms. Green stated, "Because I had various sloppy notes at the time.  I was

---

[5] The Court remains puzzled by Ms. Green's insistence that the cases, as cited, existed. [Doc. 20-1 at 1], or that the citations amounted only to "citation irregularities [stemming] from autocorrect, jumbled notes, shorthand mistakes, typographical and formatting errors," [Doc. 26 at 4].  Only after the Court repeatedly pressed her during oral argument did Ms. Green reluctantly concede that "[w]hen you put the whole citation together, yes, it is fictitious."  [Hearing Tr. 5:5–23].

extremely disorganized." [*Id.* at 6:1–4].

Disorganization alone, however, cannot explain the legal errors that plagued Plaintiff's pleadings since the inception of this case. Ms. Green conceded that the original Complaint relied on the 20% rule derived from a regulation that had been superseded in 2011—fourteen years prior to the filing of the original Complaint. [Doc. 1 at ¶¶ 2, 20–21; Hearing Tr. 2:18–3:3, 4:3–5]; *see also supra* note 1. Given the opportunity to amend unopposed, Plaintiff's First Amended Complaint is rife with errors. For instance, for the proposition that "[c]ourts interpreting § 203(y) confirm that training and authority alone are insufficient to qualify for exemption," Plaintiff cites *Huff v. DeKalb County, Ga.*, 516 F.3d 1273, 1279-80 (11th Cir. 2008) and *Morrison v. County of Fairfax, Va.*, 826 F.3d 758, 769 (4th Cir. 2016). [Doc. 18 at ¶ 24]. While Plaintiff is technically correct that § 203(y) requires more than just "training" and "authority" to engage in fire suppression to come within the FLSA exemption, neither of these cases support Plaintiff's overall position that he is not exempt under § 203(y) because he is "not regularly engaged in firefighting activities." [Doc. 18 at ¶ 23]. Rather than "confirm" this argument, [*id.* at ¶ 24], *Huff* cuts directly against it. In *Huff*, the United States Court of Appeals for the Eleventh Circuit concluded that § 203(y) does not require an employee to actually engage in fire suppression for the exemption to apply. *See Huff,* 516 F.3d at 1280–81. The *Morrison* case is simply inapposite; it does not involve § 203(y) at all. *See Morrison*, 826 F.3d 758. And most egregiously, there are four citations that do not correspond to existing cases. [Doc. 18 at ¶¶ 24–25]. For some of these citations, even after Ms. Green identified the

"corrected citation" through a footnote in the Second Motion to Amend, [Doc. 19 at 2 n.1],[6]

she conceded that such cases do not address the FLSA at all, *compare* [*id.*], *with* [Doc.

18 at ¶ 25 (misciting "*Perez v. City of Key West, Fla.*, 261 F. Supp. 3d 1252 (S.D. Fla.

2017)")], or address the FLSA prior to the amendment of the regulation upon which

Plaintiff inaccurately relied in his original Complaint, *compare* [Doc. 19 at 2 n.1], *with* [Doc.

18 at ¶ 25 (misciting "*Lang v. City of Omaha*, 186 F. Supp. 3d 1140 (D. Neb. 2016)")].

The errors did not cease with the filing of the Second Motion to Amend or the

proposed Second Amended Complaint.  In the Second Motion to Amend, Plaintiff asserts

that *Cleveland v. City of Los Angeles*, 420 F.3d 981, 990-91 (9th Cir. 2005)—a valid

citation—and "*Haro v. City of Los Angeles*, No. 12-55062 (9th Cir. Mar. 18, 2014)"[7]

"directly support Plaintiff's allegations regarding the § 203(y) firefighter exemption."  [Doc.

19 at ¶ 3].  The proposed Second Amended Complaint omits all previously cited authority

and replaces those citations with *Cleveland* and *Haro*.  [Doc. 19-1 at ¶ 24].  Plaintiff's

counsel then uses the "*see*" Bluebook signal[8] and relies on these cases for the proposition

---

[6] The relevant footnote states, "[t]hese are the correct citations to the First Amended
Complaint although they have now been removed and replaced: *Cox v. Town of
Poughkeepsie, NY*, 209 F. Supp. 2d 319 (S.D.N.Y. 2002) (contains provisions relevant to
firefighters and FLSA); *Christensen v. Harris County*, 529 U.S. 576 (2000) (May come
into play as the case progresses regarding comp time versus overtime pay); *Perez v. City
of Key West, Fla.*, 823 F. Supp. 934 (M.D. Fla. 1993) (inadvertently attached to the string
citation); *Lang v. City of Omaha*, 186 F.3d 1035 (8th Cir. 1999) (pre-amendment case to
FLSA statute)."  [Doc. 19 at 2 n.1].

[7] *Haro* is incorrectly cited in the proposed Second Amended Complaint.  [Doc. 19-1 at
¶ 24].  The correct citation is *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014).

[8] "A signal is a shorthand message to the reader about the relationship between a
proposition and the source or authority cited for that proposition."  The Bluebook: A
Uniform System of Citation B1.2, at 4 (Columbia Law Review Ass'n et al. eds., 22d ed.
2025).  According to the Bluebook, the signal "*see*" is used when "[c]ited authority clearly
supports the proposition.  '*See*' is used instead of '[no signal]' when the proposition is not

that "[c]ourts routinely deny motions to dismiss where plaintiffs have plausibly alleged that firefighting is not their primary duty." [Doc. 19-1 at ¶ 25]. But *Cleveland* and *Haro* do not support the proposition for which they are cited. Neither of these cases involved a motion to dismiss. In *Cleveland*, the United States Court of Appeals for the Ninth Circuit was considering an appeal from a ruling that arose during a trial to the court. *Cleveland*, 420 F.3d at 987–88. In *Haro*, the defendant appealed both the district court's summary-judgment ruling in the plaintiffs' favor and subsequent ruling on damages calculations. *Haro*, 745 F.3d at 1255–56. During the oral argument, Ms. Green conceded that neither case stood for the proposition for which they were cited. [Hearing Tr. at 12:22–14:10].

The record before it leads the Court to conclude that the submission of the original Complaint, the First Amended Complaint, and the proposed Second Amended Complaint all violated Rule 11 of the Federal Rules of Civil Procedure. Ms. Green is correct when she states that she has appeared before this Court and this particular judicial officer for years without similar sanctionable conduct, and this Court accounts for that in the exercise of its discretion. But here, even taking into account the demands upon Ms. Green during the August–September 2025 timeframe associated with the closing of the Tampa office of Hardin Thompson PC, [Hearing Tr. 8:1–7, 21:19–23], these circumstances cannot excuse the repeated disregard for accurate legal authority. That disregard includes reliance on a superseded regulation in the original Complaint and counsel's failure to exercise adequate care when citing legal authority in not one, but two, subsequent amended filings after opposing counsel advised her of the original error that

directly stated by the cited authority but obviously follows from it; there is an inferential step between the authority cited and the proposition it supports." *Id.* at 66.

prompted the first amendment in early September 2025.  Weighing the factors before it, this Court respectfully concludes that the conduct of Plaintiff's counsel was unreasonable under the circumstances.  As a result, a sanction against Sara A. Green and Hardin Thompson PC, jointly and severally, in the amount of $3,000, due and payable to the United States District Court for the District of Colorado, is appropriate.

## II.    Attorney's Fees Under § 1927

The Court next turns to Defendant's statement that Plaintiff's conduct "has caused unwarranted costs to Eagle County, a public, taypayer funded, entity, to defend."  [Doc. 20 at 15].  Though Plaintiff's counsel repeatedly insists that she did not engage in misconduct or act in bad faith, [Doc. 26; Hearing Tr. 9:3–4, 18:22–24, 19:19–20], the Tenth Circuit has made clear that subjective bad faith is not required for the application of sanctions under § 1927—as that standard is "virtually impossible to apply."  *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987).  Instead,

> Although subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct, we are entitled to demand that an attorney exhibit some judgment.  To excuse objectively unreasonable conduct by an attorney would be to state that one who acts "with 'an empty head and a pure heart' is not responsible for the consequences."

*Id.* (quoting *McCandless v. Great Atl. & Pac. Tea Co.,* 697 F.2d 198, 200 (7th Cir.1983)).

Nor is a sanction under § 1927 duplicative of the Court's assessment under Rule 11.  As an initial matter, a court-initiated sanction under Rule 11 may be paid only to the court.  *In re Allen*, 248 F. App'x 874, 881 n.5 (10th Cir. 2007) (citing *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147, 152 n.3 (7th Cir.1996)).  And beyond her obligations under Rule 11, as a member of the Bar of the state of Colorado and the United States District Court for the District of Colorado, Ms. Green is bound by the Colorado Rules of

Professional Conduct.  D.C.COLO.LAttyR 2(a).  Rule 3.3 of those Rules requires a
licensed attorney to conduct herself with candor toward the tribunal.  Specifically, a lawyer
shall not knowingly or recklessly make a false statement of material fact or law to a
tribunal or fail to correct a false statement of material fact or law previously made to the
tribunal by the lawyer.  Colo. RPC 3.3; *see also In re Egbune*, 971 P.2d 1065, 1069 (Colo.
1999) (holding that mental state of recklessness suffices for violation of Rule 3.3).  With
respect to the First Amended Complaint, Ms. Green testified that she inserted the
defective citations as "placeholders" or "cursory starting points"—without regard to the
correctness of the citation or relevance of the case—and failed to review her citations
before filing the pleading with the Court.  [Doc. 26 at 3; Hearing Tr. 7:6–25].  The original
Complaint and proposed Second Amended Complaint also contain serious errors.  The
repeated, reckless submission of filings containing incorrect and/or unsupported
propositions of law violates Ms. Green's ethical obligations as a Colorado attorney.

In addition to Plaintiff's successive erroneous submissions to the Court, this Court
also focuses on the conduct by Plaintiff's counsel toward opposing counsel once alerted
of the errors in the First Amended Complaint.  The Local Rules of Civil Practice for the
District of Colorado require parties to confer before filing a motion.  D.C.COLO.LCivR
7.1(a).  The Rule specifically directs the attorney for the moving party to "confer or make
reasonable, good faith efforts to confer with any opposing counsel or unrepresented party
to resolve any disputed matter."  *Id.*  Courts in this District have repeatedly observed that
meaningful conferral is more than simply a perfunctory speed bump on the way to the
filing of a motion; "the parties must hold a conference, possibly through the exchange of
correspondence but preferably through person-to-person telephone calls or face-to-face

meetings, and *must compare views and attempt to reach an agreement, including by compromise if appropriate*." *Hoelzel v. First Select Corp*., 214 F.R.D. 634, 636 (D.Colo.2003) (emphasis added).  And a violation of Local Rule 7.1(a) is an independent basis for denial of a motion.  *See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.,* No. 09-cv-00970-PAB-KMT, 2014 WL 4056578, *2 (D. Colo. Aug. 14, 2014).  In addition, the Colorado Rules of Professional Conduct extend not only to conduct before the Court, but also conduct directed at opposing counsel.  Rule 4.1 provides, *inter alia*, that "[i]n the course of representing a client a lawyer shall not knowingly: (a) make a false statement of material fact or law to a third person."

As discussed in detail above, after being advised that defense counsel could not find four of the cases as cited in the First Amended Complaint and being asked to provide them, Ms. Green did not attempt to provide any explanation.  Instead, Ms. Green insisted that "[the cases] exist but do not belong in this complaint."  [Doc. 20-1 at 1].  Indeed, only after being repeatedly pressed during oral argument did Ms. Green finally concede that the cases, as cited in the First Amended Complaint, do not exist.  [Hearing Tr. 14:16–16:10].  At no point during the correspondence between counsel did Ms. Green identify the "corrected cases," as she did in the Second Motion to Amend.  *Compare* [Doc. 20-1; Doc. 20-2] *with* [Doc. 19 at 2 n.1].  And at no point did Ms. Green respond to any of opposing counsel's inquiries directly.  *See* [Doc. 20-1; Doc. 20-2].  Inexplicably, Ms. Green's responses to defense counsel's legitimate concerns veer to exasperation:  "I am removing the citations from the complaint.  As I stated they were inadvertently included, *I do not know how else to explain that to you*."  [Doc. 20-2 at 3 (emphasis added)].  The unfortunate reality is that Ms. Green never attempted to explain.  [Hearing Tr. 16:11–

17:14].

An attempt to explain may not have yielded a different substantive outcome on the Second Motion to Amend. But it would have gone a long way toward fulfilling Ms. Green's duties to both the Court and to opposing counsel, and toward promoting civility[9] between attorneys navigating a challenging profession. And it would likely have averted the multiplication of proceedings that required defense counsel to file a Response to the Second Motion to Amend to set forth his various concerns and appear at an oral argument on the Court's Order to Show Cause.

In sum, the Court finds that Ms. Green's conduct has unreasonably and vexatiously multiplied the proceedings in this case. Specifically, Ms. Green's lack of diligence in preparing her filings led to three iterations of the Complaint and two Motions to Amend that would not have occurred had she verified her citations prior to filing. When defense counsel expressed his concerns over the citations in the First Amended Complaint, Ms. Green was evasive and uncooperative. By the time she submitted the proposed Second Amended Complaint, Ms. Green was well aware that her first two pleadings had included serious citation errors. Yet despite Ms. Green's assurances to the Court that the Second

---

[9] The Preamble to Colorado's Rules of Professional Conduct provides that "[a] lawyer should demonstrate respect for the legal system and for those who serve it, including . . . other lawyers." Colo. RPC Preamble ¶ 5. In a similar vein, the United States District Court for the Southern District of Ohio has aptly observed that "[i]n everyday life most people accord each other common courtesies. Ordinarily these include: politeness in conversation, respect for others' time and schedules, and an attitude of cooperation and truthfulness. Involvement in the legal system does not diminish the desirability of such conduct. A litigant opposing your client, a lawyer who represents that litigant, or a judge who decides an issue, has not thereby forfeited the right to be treated with common courtesy." *Med. Ctr. at Elizabeth Place, LLC v. Premier Health Partners*, No. 3:12-cv-00026, 2013 WL 5923113, at *2 (S.D. Ohio Nov. 4, 2013) (quoting S.D. Ohio Civ. R. Introductory Statement on Civility).

Amended Complaint contained "properly cited and verifiable cases" that "directly support[ed]" Plaintiff's allegations, [Doc. 19 at ¶ 3], this third attempt *still* contained a material misrepresentation of cited legal authorities. As Ms. Green herself asserts, these repeated errors occurred because she was "sloppy" and "extremely disorganized." [Hearing Tr. 6:1–17]. And because of Ms. Green's reckless disregard for both her duties to the Court and the "orderly process of justice" as a whole, *O'Rourke,* 552 F. Supp. 3d at 1188 (quotation omitted), both Defendant and the Court have been forced to devote time and resources to the recurring citation errors, the Second Motion to Amend and corresponding Opposition, and the Order to Show Cause, *see ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1356 (S.D. Fla. 2025) (imposing sanctions under § 1927 where attorney's repeated citations to hallucinated cases caused opposing parties and the court to "waste many hours responding to [his] actions").

Based on these factors, this Court concludes that an award of reasonable attorney's fees to defense counsel pursuant to 28 U.S.C. § 1927 is appropriate. To the extent that Defendant seeks such an award, it should meet and confer with Plaintiff's counsel to determine whether Plaintiff's counsel will stipulate to the amount sought before filing a Motion for Attorney's Fees compliant with Local Rule 54.3 of the District's Local Civil Rules of Practice. *See* D.C.COLO.LCivR 54.3.

## III. Dismissal Without Prejudice

Finally, the Court addresses whether dismissal of this action should be with or without prejudice. On October 9, 2025, Plaintiff filed a Notice of Voluntary Dismissal of Case Without Prejudice pursuant to Rule 41(a)(1)(A)(i) ("Notice of Dismissal") [Doc. 23]. Such dismissal is self-effectuating and immediately strips this Court of jurisdiction over

the merits.  Fed. R. Civ. P. 41(a)(1)(A)(i); *De Leon v. Marcos*, 659 F.3d 1276, 1283 (10th

Cir. 2011).  The Tenth Circuit has described dismissal under Rule 41(a)(1)(A)(i) as "an

absolute right to dismiss without prejudice." *Janssen v. Harris*, 321 F.3d 998, 1000 (10th

Cir. 2003).

It is true that even absent subject matter jurisdiction, a court retains authority to

impose sanctions under the Federal Rules of Civil Procedure or other federal statutes.

*Cooter & Gell,* 496 U.S. at 395–96 (1990); *Willy v. Coastal Corp.,* 503 U.S. 131, 136–37

(1992).  And dismissal with prejudice is available as a sanction for litigation conduct.  *See,

e.g.*, *Ehrenhaus v. Reynolds,* 965 F.2d 916 (10th Cir.1992).  But after reviewing the record

before it, this Court concludes that the *Ehrenhaus* factors[10] weigh against dismissal with

prejudice, because the actual prejudice to Defendant will be remediated through an award

of attorney's fees pursuant to 28 U.S.C. § 1927, and there is no evidence that Mr. Lewis

directed or knew of Ms. Green's conduct.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     Plaintiff's Second Motion for Leave to File Amended Complaint Limited to

Correct Citations [Doc. 19] is **DENIED as moot**;

(2)     The Order to Show Cause [Doc. 24] is **MADE ABSOLUTE**;

(3)     The Court hereby **SANCTIONS** Sara A. Green and the law firm of Hardin

---

[10] The Tenth Circuit instructs district courts to consider a non-exhaustive list of factors to
determine whether dismissal with prejudice is appropriate, including "(1) the degree of
actual prejudice to the other party; (2) the amount of interference with the judicial process;
(3) the litigant's culpability; (4) whether the court warned the party in advance that
dismissal would be a likely sanction for noncompliance; and (5) the efficacy of lesser
sanctions." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143–44
(10th Cir. 2007) (citing *Ehrenhaus,* 965 F.2d at 921).

Thompson P.C., jointly and severally, in the amount of $3,000 pursuant to Rule 11(c)(1);

(4)    Such sanctions are **DUE and PAYABLE** to the Registry of the United States District Court for the District of Colorado no later than December 15, 2025;

(5)    The Court hereby **AWARDS** Defendant Eagle County Government reasonable attorney's fees pursuant to 28 U.S.C. § 1927, subject to a Motion for Attorney's Fees to be **FILED** no later than November 28, 2025. Failure to file a timely Motion for Attorney's Fees will forfeit the right to such fees; and

(6)    The Clerk of the Court is **DIRECTED to TERMINATE** this action.

DATED:  November 14, 2025                    BY THE COURT:

Nina Y. Wang
United States District Judge